

August 5, 2004

The Honorable Eugene D. Taylor
Williamson County Attorney
Williamson County Courthouse Annex
Second Floor
405 Martin Luther King Boulevard
Georgetown, Texas 78626

Opinion No. GA-0228

Re: Whether a county clerk must accept for recording a paper copy, containing printed images of signatures or a printed image of a notary seal, of an electronic record of a real estate transaction (RQ-0186-GA)

Dear Mr. Taylor:

You ask whether a county clerk must accept for recording a paper copy, containing printed images of signatures or a printed image of a notary seal, of an electronic record of a real estate transaction.[1] You focus your inquiry on the effects of the Federal Electronic Signatures in Global and National Commerce Act (the "E-Sign Act"), 15 United States Code chapter 96 (2000); the Uniform Electronic Transactions Act (the "UETA"), found in Texas Business and Commerce Code chapter 43, *as adopted by* Act of May 24, 2001, 77th Leg., R.S., ch. 702, § 1, 2001 Tex. Gen. Laws 1341, 1341-47; and various state laws relating to a county clerk's duties as county recorder. *See* Request Letter, *supra* note 1, at 2.

## I.    Factual Background

You state that the Williamson County Clerk's Office is unable to accept electronically filed documents at this time and, consequently, accepts only paper documents for filing. *Id.* at 1-2. The Clerk's Office requires real estate filings "to contain original signatures and notary stamps or seals rather than photocopied or faxed documents." *Id.* at 1. Nonetheless, you state, some people have submitted as real estate filings "paper versions of documents which were 'electronically generated.'" *Id.* at 2. These paper copies contain "printed representations of signatures captured as digital images" instead of "original pen and ink signatures." *Id.* "Likewise," you continue, "the notary seals on these documents are computer generated rather than stamped or embossed." *Id.* As support for their position that the clerk must accept these copies, the persons attempting to file "point to" the UETA and subchapter I of the E-Sign Act, providing for electronic records and signatures in commerce. *Id.* at 2; TEX. BUS. & COMM. CODE ANN. ch. 43 (Vernon 2002 & Supp. 2004); 15 U.S.C. ch. 96, subch. I (2000). The persons further "claim that a County Clerk can be charged with a civil

_____

[1]*See* Letter from Honorable Eugene D. Taylor, Williamson County Attorney, to Honorable Greg Abbott, Texas Attorney General (Feb. 18, 2004) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

penalty" under section 11.004(b) of the Property Code, which sets out the county clerk's duties with respect to real property instruments, "if the [c]lerk refuses to accept" the paper copies. Request Letter, *supra* note 1, at 2; *see* TEX. PROP. CODE ANN. § 11.004 (Vernon 2004).

In light of this situation, you ask four questions about a clerk's obligation to accept paper copies of real estate transaction documents:

> 1. Does [the UETA] or [the E-Sign Act] require a County Clerk to accept real estate filings which contain printed images of signatures rather than original pen and ink signatures?
>
> 2. Does [the UETA] and/or Government Code § 406.013 [pertaining to a notary public's seal] require a County Clerk to accept real estate filings which contain a printed image of a notary seal rather than an original stamped or embossed seal?
>
> 3. Does [the UETA] and/or Government Code § 406.013 require a County Clerk to accept real estate filings which are faxed? Is this requirement limited to paper documents purporting to be electronically generated or may any real estate filing be faxed?
>
> 4. Is a County Clerk subject to the civil penalty provisions of Property Code § 11.004(b) for refusing to accept an "electronically generated" real estate filing?

Request Letter, *supra* note 1, at 2.

## II.    Applicable Statutes

### A.    Texas Statutes Relating to the Recording Process Generally

"A conveyance of an estate of inheritance, a freehold, or an estate for more than one year . . . must be in writing . . . ." TEX. PROP. CODE ANN. § 5.021 (Vernon 2004). A county clerk may record an instrument concerning real or personal property if the instrument (1) "has been acknowledged, sworn to with a proper jurat, or proved according to law," *id.* § 12.001(a), and (2) "is signed and acknowledged or sworn to by the grantor in the presence of . . . witnesses or acknowledged or sworn to before and certified by an officer authorized to take acknowledgments or oaths," *id.* § 12.001(b). An "officer authorized to take acknowledgments or oaths" includes a notary public, whose seal must comply with section 406.013 of the Government Code. *See id.*; *see also* TEX. GOV'T CODE ANN. § 406.013(c) (Vernon Supp. 2004). Under section 406.013, a notary public must affix to the sworn document a seal of office "by a seal press or stamp that embosses or prints a seal that legibly reproduces the required elements of the seal under photographic methods." TEX. GOV'T CODE ANN. § 406.013(c) (Vernon Supp. 2004). This requirement does not apply, however, "to an electronically transmitted authenticated document," although the electronically transmitted authenticated document "must legibly reproduce" the seal's required elements. *Id.* § 406.013(d).

Under section 11.004(a) of the Property Code, a county clerk must "correctly record . . . any instrument authorized or required to be recorded in that clerk's office," including real estate filings. TEX. PROP. CODE ANN. § 11.004(a) (Vernon 2004). A clerk who violates section 11.004 is liable for damages and "for a civil penalty of not more than $500" under subsection (b). *Id.* § 11.004(b). Finally, a clerk must be vigilant with respect to the authenticity of documents relating to real property interests, and if the clerk reasonably suspects that such a document filed, recorded, or submitted for filing or recording is fraudulent, the clerk must notify the parties listed in the document. *See* TEX. GOV'T CODE ANN. § 51.901(a) (Vernon 1998); *see also id.* § 51.901(c) (setting out circumstances in which a document is presumed to be fraudulent).

**B.    The Federal E-Sign Act**

Subchapter I of the E-Sign Act, 15 United States Code sections 7001 through 7006, governs electronic records and signatures in or affecting interstate or foreign commerce. *See* 15 U.S.C. § 7001(a) (2000); Michael J. Hays, Note, *The E-Sign Act of 2000: The Triumph of Function over Form in American Contract Law*, 76 NOTRE DAME L. REV. 1183, 1193 (2001). Neither subchapter II, which pertains to transferable records, nor subchapter III, which pertains to international electronic commerce, applies here. *See* 15 U.S.C. §§ 7021, 7031 (2000).

Under the "general rule of validity" that section 7001 (part of subchapter I) articulates, with respect to a transaction affecting interstate or foreign commerce, the electronic form of a signature, contract, or other transaction-related record "may not be denied legal effect, validity, or enforceability solely because it is in electronic form," notwithstanding any other law. *Id.* § 7001(a). A transaction, for the E-Sign Act's purposes, is "an action or set of actions relating to the conduct of business, consumer, or commercial affairs between two or more persons, including . . . the sale, lease, exchange, or other disposition of any interest in real property." *Id.* § 7006(13)(B). Subchapter I does not require a person, "other than a governmental agency with respect to a record other than a contract to which it is a party," to use or accept electronic records or electronic signatures. *Id.* § 7001(b)(2). And nothing in subchapter I "limits or supersedes" a state regulatory agency's rule "that records be filed with [the] agency . . . in accordance with specified standards or formats." *Id.* § 7004(a). *But see id.* § 7004(b)(2) (requiring that a state agency's regulation be consistent with 15 United States Code section 7001).

Section 7002(a) expressly permits a state to supersede section 7001 by adopting the UETA:

> A State statute, regulation, or other rule of law may modify, limit, or supersede the provisions of section 7001 of this title with respect to State law only if such statute, regulation, or rule of law—
>
> (1) constitutes an enactment or adoption of the [UETA] as approved and recommended for enactment in all the States by the National Conference of Commissioners on Uniform State Laws in 1999, except that any exception to the scope of such Act enacted by a State under section 3(b)(4) of such Act [authorizing a state to exempt from UETA transactions governed by (1) law governing the execution of wills; (2) certain parts of the Uniform Commercial

Code; (3) [the Uniform Computer Information Transactions Act]; and (4) [other laws, if any, identified by the State]] shall be preempted to the extent such exception is inconsistent with this subchapter or subchapter II of this chapter, or would not be permitted under paragraph (2)(A)(ii) of this subsection; or

(2)(A) specifies the alternative procedures or requirements for the use or acceptance (or both) of electronic records or electronic signatures to establish the legal effect, validity, or enforceability of contracts or other records, if—

(i) such alternative procedures or requirements are consistent with this subchapter and subchapter II of this chapter; and

(ii) such alternative procedures or requirements do not require, or accord greater legal status or effect to, the implementation or application of a specific technology or technical specification for performing the functions of creating, storing, generating, receiving, communicating, or authenticating electronic records or electronic signatures; and

(B) if enacted or adopted after June 30, 2000, makes specific reference to this chapter.

*Id.* § 7002(a).

## C.     The Texas UETA

In 2001 Texas adopted the UETA, a uniform act promulgated by the National Conference of Commissioners on Uniform State Laws in 1999,[2] as chapter 43 of the Business and Commerce Code. *See* Act of May 24, 2001, 77th Leg., R.S., ch. 702, § 1, 2001 Tex. Gen. Laws 1341, 1341-47. The UETA applies generally to electronic records and electronic signatures relating to a transaction (defined as "an action or set of actions occurring between two or more persons relating to the conduct of business, commercial, or governmental affairs," TEX. BUS. & COMM. CODE ANN. § 43.002(15) (Vernon 2002)), although a transaction subject to the UETA remains "subject to other applicable substantive law." *Id.* § 43.003(a), (d). An electronic record is "a record created, generated, sent, communicated, received, or stored by electronic means." *Id.* § 43.002(7); *see also id.* § 43.002(5), (12) (defining the terms "electronic" and "record"). An electronic signature is "an

---

[2]*See* Letter from John M. McCabe, Legal Counsel/Legislative Director, National Conference of Commissioners on Uniform State Laws, to Honorable Greg Abbott, Texas Attorney General, at 1 (rec'd Apr. 9, 2004) (on file with the Opinion Committee) [hereinafter NCCUSL Brief].

electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." *Id.* § 43.002(8).

While the UETA must be construed "to facilitate electronic transactions consistent with other applicable law," *id.* § 43.006(1), it does not require the creation, receipt, or use of an electronic record or signature in any circumstance, and the UETA applies only to "transactions between parties each of which has agreed to conduct transactions by electronic means." *Id.* § 43.005(a)-(b). Section 43.007 recognizes electronic records and electronic signatures:

> (a) A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.

> (b) A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation.

> (c) If a law requires a record to be in writing, an electronic record satisfies the law.

> (d) If a law requires a signature, an electronic signature satisfies the law.

*Id.* § 43.007.

Section 43.019 explicitly "modifies, limits, or supersedes" the E-Sign Act, as 15 United States Code section 7002(a) authorizes a state to do. *Id.* § 43.019; *see* 15 U.S.C. § 7002(a) (2000). Section 6(a) of the 2001 enacting legislation appears to limit section 43.019's effect, however:

> Notwithstanding Section 43.019 . . . . Chapter 43 . . . does not modify, limit, or supersede the provisions of . . . 15 U.S.C. [§§] 7001 ["General rule of validity"] and 7003 ["Specific exceptions"] . . . and specifically does not authorize the electronic delivery of any notice of the type described by . . . 15 U.S.C. [§] 7003[(b)] . . . .

Act of May 24, 2001, 77th Leg., R.S., ch. 702, § 6(a), 2001 Tex. Gen. Laws 1341, 1347-48. Section 7003(b), 15 United States Code, provides that section 7001, the "general rule of validity," does not apply to court documents; notices of the cancellation or termination of utility services; certain notices regarding debt on and possession of an individual's primary residence; cancellation or termination of health insurance or benefits or life insurance benefits (excluding annuities); notices of product recalls; and certain documents that accompany toxic or dangerous materials, such as hazardous materials. *See* 15 U.S.C. § 7003(b) (2000).

## C.    Preemption Issues

It is not clear, from the E-Sign Act or from the Texas UETA, whether or to what extent the Texas UETA modifies, limits, or supersedes the E-Sign Act. Commentators have found the E-Sign Act's "exemption to preemption" confusing and suggest that it may be subject to multiple

interpretations. *See* Nathan A. Huey, Note, *E-Mail and Iowa's Statute of Frauds: Do E-Sign and UETA Really Matter?*, 88 IOWA L. REV. 681, 695-99 (2003); Patricia Brumfield Fry, *A Preliminary Analysis of Federal and State Electronic Commerce Laws* (2001), *available at* www.nccusl.org/ nccusl/whatsnew-article1.asp) (last visited July 5, 2004) [hereinafter Fry]; Robert A. Wittie & Jane K. Winn, *Electronic Records and Signatures Under the Federal E-Sign Legislation and the UETA*, 56 BUS. LAW. 293, 324-33 (2000) [hereinafter Wittie & Winn]. No court has considered the E-Sign Act's preemptive effect. With respect to Texas's version of the UETA in particular, section 43.019 of the Business and Commerce Code purports to modify, limit, or supersede the E-Sign Act in full, but section 6 of the enacting legislation restricts section 43.019's effect and specifically does not supersede 15 United States Code sections 7001 and 7003. *See* TEX. BUS. & COMM. CODE ANN. § 43.019 (Vernon 2002); Act of May 24, 2001, 77th Leg., R.S., ch. 702, § 6(a), 2001 Tex. Gen. Laws 1341, 1347-48.

Given this uncertainty, we are reluctant to determine which act prevails in Texas. To the extent your questions concern section 7001 or 7003 of the federal statute, we assume that the federal law preempts the relevant portions of the UETA. To the extent your questions involve sections other than sections 7001 or 7003, we assume the UETA prevails.

## III.  Relevant National Conference of Commissioners on Uniform State Laws Comments and Attorney General Opinions

Your questions generally involve a county recording officer's duty to accept documents resulting from electronic transactions under the E-Sign Act and the UETA. *See* Request Letter, *supra* note 1, at 2. The National Conference of Commissioners on Uniform State Laws (the "NCCUSL"), which drafted the UETA, has noted the general uncertainty as to whether either act requires local recording officers to accept electronic documents:

> [E]ven though documents that result from electronic transactions are valid and enforceable between the parties [under the E-Sign Act and the UETA], there is no broad agreement about whether those documents may be recorded in the various local land records offices in the several states. Laws and regulations in many states frequently limit a recordable document to one that is in writing or on paper. They may also require that the recorded document be an original document. Similar laws and regulations may require signatures to be in writing and acknowledgments to be signed. Being electronic and not on paper, being an electronic version of an original paper document, or having an electronic signature or acknowledgment instead of a handwritten one, an electronic document might not be recordable under the laws of these states . . . .[3]

---

[3]National Conference of Commissioners on Uniform State Laws, Uniform Real Property Electronic Recording Act at 1, *available at* http://www.law.upenn.edu.bll/ulc/urpera/URPERA2004AnnMtgDraft.htm (last visited July 5, 2004) [hereinafter NCCUSL Draft] (citation omitted).

The NCCUSL currently is drafting a Uniform Real Property Electronic Recording Act "to assist state and local government[s] in making a full transition to electronic media."[4] The draft's prefatory note describes the UETA and the E-Sign Act as giving "legal effect to real estate transactions that are executed electronically and allow[ing] them to be enforced between the parties thereto." NCCUSL Draft, *supra* note 3, at 1. Presumably, the new Uniform Real Property Electronic Recording Act, will, if adopted, further clarify a local recording officer's duties with respect to electronic transactions.[5]

No courts have considered issues analogous to those you raise.[6] Attorneys general in California and New York have considered analogous issues, however.

---

[4]NCCUSL Brief, *supra* note 2, at 3.

[5]Our conclusion is consistent with the comments of the State Bar of Texas, Business Law Section, relating to the UETA. *See generally* TEX. BUS. & COMM. CODE ANN. ch. 43 (Vernon Supp. 2004). In comments on section 43.008, the Business Law Section states that, while an electronic real estate conveyance would be "effective between the parties," it "would not be recordable in the deed records of the particular county until the county had adopted an electronic filing system in accordance with Chapter 195, Local Government Code. . . . Thus, until electronic filing of real estate conveyances in the proper records becomes possible, conveyances written on paper . . . will be preferable so that the purchaser's rights against third parties can be protected through the filing system." *Id.* § 43.008 cmt. 2.

[6]A lower New York court questioned the E-Sign Act's constitutionality to the extent that it (1) attempts to "commandeer[] the activities of a state to achieve a federal purpose" and (2) goes "beyond issues of interstate commerce." *People v. McFarlan*, 744 N.Y.S.2d 287, 293 (N.Y. Sup. Ct. 2002). The New York court considered the E-Sign Act's applicability to a printout of a computer-generated photo array of possible suspects. *See id.* at 289, 293. The court felt that the E-Sign Act may well be unconstitutional, at least in part:

> While the thrust of E-Sign, that it relates to "transactions in or affecting interstate commerce," when applied to the instant case, would seem to exclude the police records used in this case, as there is no transaction as defined by [15] U.S.C.A. § 7006(13), the effect of preemption is much broader. E-Sign would, for example, purport to cover the same police record if it were used (or perhaps referred to) in a commercial transaction. The impact of imposing upon a State a rule as to such state's records when used in a transaction, but not when the same records are not, is in the real world a rule imposing the rule on such state's records for all purposes. . . . This effective imposition of a federal rule on State records thus may well constitute a violation against the rule against commandeering the activities of a state to achieve a federal purpose. [*See*] *Printz v. U.S.*, 521 U.S. 898 . . . (1997) (holding [under article I, section 8 of the United States Constitution] that the Brady Hand Gun Act provisions requiring the states to conduct background checks on gun purchases was unconstitutional).
>
> A second reason why E-Sign may not apply in New York, at least [with] respect to transactions not in interstate commerce, is the Tenth Amendment to the United States Constitution. The issue here is whether and to what extent the federal government may use the language of the interstate commerce clause to go beyond issues of interstate commerce to impose a better nationwide rule. While admittedly, life would be simpler and perhaps better if the same rule applied to all contracts, their formation and interpretation across the country, creating uniformity for commercial laws has generally been left to state action.

*Id.* at 293-94 (footnote omitted).

In 2002 the California attorney general implicitly determined that the E-Sign Act does not require a county recorder to accept electronic documents, which would include electronic signatures. *See* Op. Cal. Att'y Gen. No. 02-112 (2002). In that opinion, the California attorney general addressed whether county recorders may "implement electronic recordation of documents in their respective jurisdictions," analyzing whether "a conflict exists between" the state statutes governing the county recorder's duties and responsibilities, the California version of the UETA, and the E-Sign Act. *Id.* at 2. California law requires a county recorder to accept for recordation an instrument, paper, or notice that "contain[s] an original signature or signatures, except as otherwise provided by law, or [that is] a certified copy of the original." *Id.* (quoting CAL. GOV'T CODE § 27201(b)(1)). In certain limited circumstances, California law permits a county recorder to accept for recording a digitized image of a recordable instrument in lieu of a written paper if the "image conforms to all other applicable statutes that prescribe recordability, except the requirement of original signatures." *Id.* at 3 (quoting CAL. GOV'T CODE § 27279(b)(1)). The opinion notes that the California UETA provides that county recorders' duties, "in respect to recording instruments," are prescribed by the state statutes governing recorders' duties and responsibilities. *Id.* at 6. In addition, though the California version of the UETA—like section 43.007 of the Texas Business and Commerce Code—stipulates that electronic records and electronic signatures satisfy laws requiring written records or written signatures, the attorney general stated that this stipulation applies only to "the legal effect and enforceability of the transactions themselves . . . and not to the recordation of a document reflecting a transaction between two independent parties." *Id.* at 7. The attorney general construed the E-Sign Act similarly:

> E-sign concerns the legal effect, validity and enforceability of electronic records and electronic signatures relating to transactions between private parties. E-sign refers throughout to "a contract or other record relating to a transaction in or affecting interstate or foreign commerce." Also similarly defined, the term "transaction" means "an action or set of actions relating to the conduct of business, consumer, or commercial affairs between two or more persons. . . ." (15 U.S.C. § 7006(13).) E-sign contains no reference to the legal duty of a county recorder to record documents.

> Accordingly, E-sign does not preempt the [relevant] provisions of [the California] Government Code . . . specifying the duties of county recorders. . . . Nothing in E-sign may be construed as a direct enactment positively impairing the public policy of this state relating to the recordation of documents.

*Id.* at 10. Finding that neither the UETA nor the E-Sign Act requires a county recorder to accept electronic documents, the attorney general concluded that county recorders generally are not authorized under the state law prescribing their duties and responsibilities to implement electronic recordation of documents. *See id.* at 12.

In another opinion, the California attorney general determined that the UETA does not require the secretary of state to accept for filing a nonprofit organization's certificate of voluntary dissolution containing facsimiles of the directors' signatures rather than their original signatures.

*See* Op. Cal. Att'y Gen. No. 02-514 (2002). Focusing on the California statute analogous to section 43.007 of the Texas Business and Commerce Code, which states that an electronic record or electronic signature satisfies a law requiring a written record or signature, the attorney general pointed out, first, that the UETA does not require the receipt of a record or signature by electronic means or in an electronic form. *See id.* at 3 (citing CAL. CORP. CODE § 1633.7). Moreover, this statute applies only to "the legal effect and enforceability of the transaction itself . . . and not to the filing or recordation of a document reflecting the transaction." *Id.* Second, the UETA applies only "to transactions between" consenting parties, and the "filing or recordation of a document concerning the transaction does not render the act of filing or recordation itself a new 'transaction' or make the public agency a 'party' to the original transaction." *Id.*

In 2001 the New York attorney general similarly concluded that "there is a substantial possibility that" the E-Sign Act does not preclude "a county recording officer from rejecting a filing submitted for recordation that bears only an electronic signature but lacks an 'original signature.'" Op. N.Y. Att'y Gen. No. 2001-3, 2001 WL 1095069, *1 (2001). Reviewing New York laws that prescribe a county recorder's duties, the attorney general found that recording officers are barred "at the present time from accepting filings submitted for recordation that contain electronic signatures." *Id.* at *2. The attorney general determined that, although the E-Sign Act covers activities relating to "the transfer of an interest in real property from one person . . . to another," it "does not . . . cover the related but distinct activity of recordation of a private transaction, which is purely governmental in nature." *Id.* at *3. With respect to section 7004 of the E-Sign Act, which preserves a state regulatory agency's authority to require "that records . . . filed with [the] agency" comply with "specified standards or formats," the attorney general found it "unclear" whether a county recording officer would be a state regulatory agency encompassed by section 7004. *Id.* at *6. Ultimately, however, the attorney general concluded that the section was intended to "'protect recording systems . . . from any obligation to immediately convert to electronic records.'" *Id.* (quoting Fry, *supra* p. 6, at 11). The attorney general also cites section 7001(e) of the E-Sign Act, which authorizes a state to enact a statute that denies validity of an electronic record if the electronic record "is not in a form that is capable of being retained and accurately reproduced," 15 U.S.C. § 7001(e) (2000), as evidence that Congress was reluctant to "force states to immediately adopt new standards and formats that accommodate electronic filings." Op. N.Y. Att'y Gen. No. 2001-3, 2001 WL 1095069, *6 (2001). "If the integrity and authenticity of a paperless record cannot be assured over time because a state cannot, for example, properly store and retrieve filings that contain electronic signatures," then section 7001(e) of the E-Sign Act permits the state to "refuse to accept such filings." *Id.* "In sum," the New York attorney general concluded, "although the issue ultimately may be decided by the courts, it is our estimation . . . that there is a substantial possibility that E-SIGN does not . . . obligate county recording officers to accept for recordation a filing that contains only an electronic signature but lacks an . . . 'original signature.'" *Id.* at *7.

## IV.   Analysis

### A.   The First Question

Having set out the relevant law and attorney general opinions, we turn to your questions. You ask first whether, under the UETA or the E-Sign Act, a county clerk must accept real

estate filings that contain printed images of signatures rather than original pen and ink signatures. *See* Request Letter, *supra* note 1, at 2.

We conclude, like our counterparts in California and New York, first, that the E-Sign Act does not require a county clerk to accept real estate filings that contain printed images of signatures rather than original pen and ink signatures. While section 7001 of the E-Sign Act is not clearly limited to transactional documents, we believe that a court probably would construe it to be so. The New York attorney general cited a pre-enactment statement by Congressman Dingell that recording of real property documents is "precisely the type of 'uniquely governmental' transaction unaffected by the preemptive sweep of" section 7001(a)(1). Op. N.Y. Att'y Gen. No. 2001-3, 2001 WL 1095069, *5 (2001). Section 7001 of the E-Sign Act states that "with respect to any transaction in or affecting interstate or foreign commerce," an electronic signature by itself does not render a contract or other record "relating to such transaction" invalid. 15 U.S.C. § 7001(a)(1) (2000). A real property filing is not a "transaction" for purposes of the E-Sign Act, *see id.* § 7006(13) (defining the term "transaction"), but a document intended for filing among a clerk's real property records may be a record "relating to" a real property conveyance. *See id.* § 7001(a)(1); *see* Wittie & Winn, *supra* p. 6, at 320-21 (stating that the phrase "relating to" extends the E-Sign Act's reach "beyond actual transaction documents to include all ancillary records, such as applications, filings, notices, and similar documentation"). The E-Sign Act defines the term "transaction," but it does not define the phrase "relating to," and no court has yet defined the term. *See* 15 U.S.C. § 7006(13) (2000).

Second, the UETA does not require a county clerk to accept electronically transmitted documents or signatures. *See* TEX. BUS. & COMM. CODE ANN. § 43.005(a) (Vernon 2002); *see also* 13 TEX. ADMIN. CODE §§ 7.141(4), 7.142(a)-(b) (2004). The UETA applies only to transactions between consenting parties. *See* TEX. BUS. & COMM. CODE ANN. § 43.005(b) (Vernon 2002). Third, and finally, you do not ask about an electronic signature; you ask about a paper copy of an electronic signature. Nothing in the E-Sign Act or the UETA applies to such a record. *See generally id.* ch. 43.

We accordingly conclude that a county clerk is not required to accept real estate filings that contain copies of electronic signatures.

### B.    The Second Question

You ask second whether the UETA or section 406.013 of the Government Code requires a county clerk to accept real estate filings containing a copy of an electronically transmitted notary public seal. *See* Request Letter, *supra* note 1, at 2. Although you do not ask about the E-Sign Act, we believe, for the reasons cited by the California and New York attorneys general and the reasons cited in answer to your first question, that the E-Sign Act does not require a county clerk to accept real estate filings containing a copy of an electronically transmitted notary public seal. Additionally, nothing in the UETA requires a clerk to accept documents for filing, any portion of which is transmitted electronically. Moreover, as we have pointed out, neither the E-Sign Act nor the UETA pertains to copies of electronic documents. Section 406.013 of the Government Code, which excepts from the requirement that a notary public seal be affixed to a document an "electronically transmitted authenticated document," does not thereby require a clerk to accept for

filing a document containing a copy of an electronically transmitted notary public seal. *See* TEX. GOV'T CODE ANN. § 406.013(d) (Vernon Supp. 2004).

We consequently conclude that neither the UETA nor section 406.013, Government Code, requires a county clerk to accept for filing a document containing a copy of an electronically transmitted notary public seal.

### C.    The Third Question

You ask third whether the UETA or section 406.013 of the Government Code requires a county clerk to accept faxed real estate filings. *See* Request Letter, *supra* note 1, at 2. A fax is an electronic record for purposes of the UETA. *See* TEX. BUS. & COMM. CODE ANN. § 43.002(5), (7) (Vernon 2002) (defining the terms "electronic" and "electronic record"); *see also Madden v. Hegadorn*, 565 A.2d 725, 728 (N.J. Super. Ct. Law Div.), *aff'd*, 571 A.2d 296 (N.J. Super. Ct. App. Div. 1989) (per curiam) (explaining the "common knowledge that 'fax' machines electronically scan documents, reduce the documents to a series of digital signals and transmit them over telephone lines to a receiving machine which reassembles the signals and then reproduces the original documents"); Tex. Att'y Gen. Op. No. JC-0471 (2002) at 4 (describing how a fax machine works). The UETA does not require a clerk to receive faxes, or other electronic records, in any circumstances. *See* TEX. BUS. & COMM. CODE ANN. § 43.005(a) (Vernon 2002). Nor does section 406.013, which serves only to except documents that are permitted to be electronically transmitted from the embossed or printed notary public seal requirement. *See* TEX. GOV'T CODE ANN. § 406.013(c)-(d) (Vernon Supp. 2004).

We thus conclude that neither the UETA nor section 406.013 of the Government Code requires a county clerk to accept faxed real estate filings.

### D.    The Fourth Question

Finally, you ask whether a county clerk who refuses to accept an electronically generated real estate filing may be liable for civil penalties under section 11.004(b) of the Property Code. *See* Request Letter, *supra* note 1, at 2. Under section 11.004(b), a county clerk who fails to correctly record an instrument that is "authorized or required to be filed in that clerk's office" is liable "for a civil penalty of not more than $500." TEX. PROP. CODE ANN. § 11.004(a)(1), (b) (Vernon 2004). A county clerk has no duty to accept and record a paper copy of an electronically generated real estate filing. Indeed, the State Library and Archives Commission's rules make this clear: a county clerk may *choose* to participate in an electronic filing system. *See* 13 TEX. ADMIN. CODE §§ 7.141(4), 7.142(a), (b) (2004). Moreover, because an electronically generated document does not comply with statutory requirements for real estate filings, *see* TEX. PROP. CODE ANN. §§ 5.021, 12.001(a) (Vernon 2004), a county clerk is prohibited from recording such a document.

Consequently, a county clerk does not violate section 11.004 by refusing to record an electronically generated real estate filing, and the clerk is not liable for civil penalties under section 11.004(b).

## S U M M A R Y

Nothing in the E-Sign Act, 15 United States Code chapter 96, or the Uniform Electronic Transactions Act (the "UETA"), chapter 43 of the Texas Business and Commerce Code, requires a county clerk to accept real estate filings that contain copies of electronic signatures. Similarly, nothing in the UETA, nor in section 406.013 of the Government Code, requires a county clerk to accept real estate filings containing a copy of an electronically transmitted notary public seal. Neither the UETA nor section 406.013 requires a county clerk to accept faxed real estate filings. Furthermore, current statutory requirements in the Property Code appear to prohibit a county clerk's recording of an electronically generated record or a copy of such a record, including an electronically generated signature or notary public seal or a faxed document. Finally, a county clerk who refuses to accept an electronically generated real estate filing is not liable for civil penalties under section 11.004(b) of the Property Code.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee